**Harold G. OLSON, Plaintiff,**

v.

**REGENTS OF the UNIVERSITY OF MINNESOTA, a corporate body, Defendants.**

**No. 5–69 Civ. 28.**

United States District Court
D. Minnesota,
Fifth Division.

July 25, 1969.

John Scherer, Andrew Larson, Newton S. Friedman, Duluth, Minn., for plaintiff.

R. Joel Tierney, Minneapolis, Minn., for defendants.

NEVILLE, District Judge.

 This is a civil action commenced under the Federal Civil Rights Act challenging on constitutional grounds the Civil Service Rules of the University of Minnesota and the dismissal thereunder of plaintiff, a University employee. The amended complaint seeks a declaration that the procedures of these Civil Service Rules are violative of the due process clauses of the Fifth and Fourteenth Amendments to the United States Constitution. The amended complaint further prays for injunctive and mandatory relief and requests that plaintiff be reinstated as a University employee.[1] Jurisdiction is present under 28 U.S.C. §§ 1343 and 2201 and 42 U.S.C. § 1983. See Whitner v. Davis, 410 F.2d 24 (9th Cir. 1969).

At the hearing on plaintiff's motion for a temporary injunction by stipulation the Regents of the University of Minnesota as a corporate body was substituted as party defendant instead and in lieu of the sixteen named individual defendants. A dismissal in their favor is hereby entered. Though at the close of the argument both parties agreed that the trial of the action

---

1. The complaint purports to be drafted as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure. The court holds that this case is not appropriately a class action. There is no showing under Rule 23 of the Federal Rules of Civil Procedure that any other persons are in positions similar to that of plaintiff nor do any others claim to have been injured by defendants' act in terminating plaintiff's employment. There is thus no class to whom, for instance, notice can or should be given under Rule 23(b) or whose members would be bound res adjudicata by the decision of this case. The mere fact that the decision in this case may or may not establish a precedent affecting other persons does not make it a class action.

on the merits should be advanced and consolidated with the hearing on the application for preliminary injunction pursuant to Rule 65(a) (2) of the Federal Rules of Civil Procedure, the use of the term "merits" does not imply that the court is asked to, nor will it, determine whether just cause existed to terminate plaintiff's employment but rather whether there is a constitutional question involved affecting the University's Civil Service Rules and plaintiff's employment termination.

The facts are not in dispute. Plaintiff is 59 years of age and has been a permanent civil service employee of the University of Minnesota, Duluth Campus for the past 14 years. During 1968 plaintiff was reclassified to the position of Maintenance and Operations Mechanic and he continued in that position until January 23, 1969 when he was dismissed summarily by his supervisor. Plaintiff was separated from his employment by his supervisor orally and without any prior notice or hearing. On February 13, 1969, some 21 days later, the supervisor directed a letter to plaintiff confirming his dismissal. This letter reads in part:

"This is to confirm your dismissal on January 23, 1969. You were terminated for the following reasons:

1. Repeated threats of physical harm to other employees, which you had been warned about several times, including a warning that you would be terminated if you laid a hand on any employee.

2. Physical attack upon your supervisor on January 22, 1969.

3. Physical attack upon the Superintendent of Plant Services on January 23, 1969.

Your rights of appeal are governed by University of Minnesota Civil Service Rule 17. A copy of these rules is enclosed." [2]

The Civil Service Rules of the University of Minnesota cover various employment relations such as employee training, hours of work, attendance and holidays, health and safety, collective bargaining, leaves of absence, seniority, separation, reinstatement and reemployment, problem prevention, problem solving, discipline and dismissal, and grievance procedures. Plaintiff was dismissed under Rule 16.4 which states:

"16.4 *Dismissal*

16.41 An employee who has passed his probationary period may be dismissed from his position *for just cause.*

16.42 A written statement of reasons for dismissal sufficient under the circumstances shall be given to the employee by the supervisor or department head with a copy to the Director and the formal (authorized sole bargaining) representative, if any. The date on which the dismissal *is to be effective* shall be named in this statement.

16.43 The employee may appeal a dismissal or the sufficiency of the statement of reasons for dismissal in accordance with Rule 17. The appeal of the sufficiency of a statement of reasons for dismissal shall not affect the effective date of the dismissal." [emphasis added]

Rule 17 allows an appeal to the Director of the Department of Civil Service Personnel who may grant a hearing and allow both parties to submit factual information and argument. Rule 17.331. If the Director's decision is unsatisfactory to the employee, he may appeal to the Civil Service Committee or to arbitration. Rule 17.42. If the appeal is to the Committee, the Chairman of the Committee may appoint a panel of three to hear the appeal. This appeal is to be by "written stipulation" which "shall state the issue or issues which were submitted in writing to the Director and the Director's disposition or failure to dispose of these issues

---

2. Defendant's Brief, Exhibit A.

within the time limits set." Rule 17.511. Within 15 days from the receipt of this stipulation, the Chairman of the Committee is required to schedule a hearing at a time not more than 30 days after the date of the receipt of the stipulation. At this hearing both parties have the opportunity to present evidence and such oral or written arguments as they desire. The Rules also permit supplemental briefs to be submitted. Rule 17.531. Within 20 days after the hearing is concluded, the Committee or panel is required to render a written decision. If the employee is still not satisfied, he may appeal to a board of arbitrators again by written stipulation. Each side appoints one arbitrator and the two chosen arbitrators agree on a third. Another hearing is held and a written decision rendered. The decision of the arbitrators is final and binding on both parties. Rule 17.77.

The court was informed at the oral argument that plaintiff has perfected a timely appeal under Rule 17 but that those proceedings by agreement and without prejudice have been stayed pending a determination in this action as to whether plaintiff's original dismissal on January 23, 1969 (whether or not for good cause) was contrary to plaintiff's guaranteed constitutional rights.

■■ For this court to have jurisdiction under the Civil Rights Act, 42 U.S.C. § 1983 and other companion statutes, plaintiff must establish that a State or an agency thereof—here the University of Minnesota—acted in deprivation of "any rights, privileges, or immunities secured by the Constitution and laws." Plaintiff thus must establish a constitutional violation or else pursue his remedies if any in the Minnesota State Courts. If his rights under the due process clauses of the United States Constitution have not been protected, however, he has stated a cause of action in the Federal Court. Due process is today equated with the terms of "fair treatment" and "reasonable action" in the premises.

It was once held that a citizen has no "constitutional right to be a policeman" and that governmental employment was an unprotected privilege and not a right. See the opinion by Mr. Justice Holmes, as a member of the Massachusetts Supreme Judicial Court, in McAuliffe v. Mayor of New Bedford, 155 Mass. 216, 220, 29 N.E. 517, 517 (1892). More recently, however, this right-privilege distinction as a limitation on substantive or procedural due process affecting employment in the public sector has been seriously eroded if not virtually rejected. See *e. g.,* Wieman v. Updegraff, 344 U.S. 183, 73 S.Ct. 215, 97 L.Ed. 216 (1952); Slochower v. Board of Higher Education, 350 U.S. 551, 76 S.Ct. 637, 100 L.Ed. 692 (1956); Pickering v. Board of Education, 391 U.S. 563, 88 S.Ct. 1731, 20 L. Ed.2d 811 (1968); Greene v. McElroy, 360 U.S. 474, 79 S.Ct. 1400, 3 L.Ed.2d 1377 (1958); Dixon v. Alabama State Board of Education, 294 F.2d 150 (5th Cir.), *cert. denied,* 368 U.S. 930, 82 S.Ct. 368, 7 L.Ed.2d 193 (1961); and Kelly v. Wyman, 294 F.Supp. 893 (S.D.N.Y.1968) (three-judge court); W. W. Van Alstyne, The Demise of the Right-Privilege Distinction in Constitutional Law, 81 Harv. L.Rev. 1439 (1968). "The focus of inquiry has shifted from identification of individual rights to an examination of the reasonableness of governmental action." Note, Dismissal of Federal Employees— The Emerging Judicial Role, 66 Colum.L. Rev. 719, 734 (1966). Thus in Wieman v. Updegraff, *supra* 344 at 192, 73 S.Ct. at 219 the Supreme Court stated:

"We need not pause to consider whether an abstract right to public employment exists. It is sufficient to say that constitutional protection does extend to the public servant whose exclusion pursuant to a statute is patently arbitrary or discriminatory."

■ In the court's view, the issue of substantive due process is not before the court in this case. Though the University in its brief attempts to place itself in the position of a private industrial employer who can hire or discharge an employee at will and with or without cause or for any reason, such an argument cannot seriously be brooked here in view of the University's own Civil Service Rule

16.41, quoted above, which permits the dismissal of an employee (when beyond his probationary period) "for just cause". This as a negative pregnant clearly prohibits dismissal without just cause. The University has thus on its own initiative and effectively, as least for purposes of this lawsuit, recognized by its Rules 16 and 17 that an employee in plaintiff's position does have a substantive due process right to continue his employment without termination unless and until just cause has been shown at a hearing to exist. The University relies on Kierk v. City of Thief River Falls, 255 Minn. 141, 96 N.W.2d 28 (1959); Oikari v. Independent School District #40, 170 Minn. 301, 212 N.W. 598 (1927) and State ex rel. Early v. Wunderlich, 144 Minn. 368, 175 N.W. 677 (1920). These cases stand for the proposition:

"'* * * The authorities all agree that the power to appoint officers or employes [sic] of a municipal corporation carries with it the power to remove such appointees at pleasure unless the power of removal is restricted by statutory law.'" 96 N.W.2d at 29

Assuming arguendo the validity of these cases today, in the case at bar we have the equivalent of a statute in Rule 16.41 and thus action in derogation thereof is and would be condemned. The court thus does not deem it necessary to discuss at any length the line of federal cases some of which are cited above nor the Minnesota cases cited by defendant discussing the distinction between employment in private industry and employment in the public sector and the application of due process thereto.

As stated by Van Alstyne in his article *supra* in 81 Harv.L.Rev. at 1461–62:

"With the increasing size of government as an economic unit, moreover, it is simply no longer true that a particular infringement related to employment by government is no greater than a particular infringement made by a private employer. Holmes' conclusion that there is 'no constitutional right to be a policeman' may have been influ-

enced by the comparatively small economic role played by governmental units in 1892. Excluding McAuliffe from public employment still left open to him a very large percentage of the available employment in the country. But today the federal and state governments directly or indirectly control a great proportion of the nation's employment; if one is unable to hold public employment, his chances of personal economic success are significantly limited. Not only is he excluded from a substantial portion of the available jobs, ranging from postman to nuclear scientist, but his bargaining power with other employers is proportionately decreased. And the expansion of government with its attendant influence on the individual is not limited to employment, for the government is playing an increasingly crucial role in other areas such as housing, education, and welfare. In the field of welfare especially, the individual's alternatives to acceptance of arbitrary government action are practically nonexistent, and the potential control over his personal life is therefore practically absolute. This substantial influence which expanded governmental activity gives the government over the private lives of its citizenry makes the restraints of substantive due process necessary. Indeed, a failure to demand substantive due process of government even as it expands would be a constitutional incongruity against the emerging trend to bring private decision makers within the Constitution when the impact of their enterprises becomes so great that the power they wield is functionally equivalent to that traditionally exercised only by government."

"We may be a long time in working out the content of substantive due process in the public sector, just as we have been a long time evolving its standards in the private sector. * * * But that under appropriate circumstances one's interest in his government job, his publicly financed home, his food stamp meals, or his state uni-

versity educational opportunities may indeed be constitutional rights in the positive-law sense ought no longer be denied. That these interests may be regulated compatibly with other competing interests need not be denied either any more than it can be denied that interests in private property may be regulated by zoning ordinances, sanitation codes, building permits, or antidiscrimination laws. * * * " 81 Harv.L.Rev. at 1463–64

The real question in this case is procedural due process, i. e., were plaintiff's rights violated and ignored because he did not have a full hearing prior to the termination of his employment; and if he is not entitled to a full hearing prior to his termination, were his rights violated in this particular instance because he received no advance notice of his termination and thus had no chance prior thereto to assert himself or protest his position?

■ The court does not believe that due process means or requires a full-fledged judicial trial or hearing prior to dismissal. Indeed, a University employee does have a right in due course, but not necessarily prior to termination, to a hearing and may take several administrative appeals if he is dissatisfied with the decision. As was stated in Sessions v. State of Connecticut, 293 F.Supp. 834, 837 (D.Conn.1968):

> "Were the law otherwise, the employment status of any governmental employee could not be terminated without subjecting the employer to a protracted judicial hearing. This would impose a prohibitive burden on the employer and result in a substantial reduction in government work production standards. Administrators would generally accept an inferior service, rather than be subjected to the rigors of a judicial hearing, where evidential proof would be required to justify their administrative personnel decisions."

The court believes that while due process does not require a full hearing prior to dismissal, it does require advance written notice with the opportunity to respond either in writing or by an informal appearance. See and compare, Birnbaum v. Trussell, 371 F.2d 672 (2nd Cir. 1966) ; Kelly v. Wyman, 294 F.Supp. 893 (S.D. N.Y.1968) (three-judge court) ; Stricklin v. Regents of the University of Wisconsin, 297 F.Supp. 416 (W.D.Wis. 3/18/69) ; Sessions v. State of Connecticut, 293 F.Supp. 834 (D.Conn.1968).

■ Rule 16 of the University Rules states that an employee is entitled to "a written statement of reasons for dismissal." The Rule is unclear as to when such notice must be given and when an employee's dismissal is to be effective. The court is of the opinion that for Rule 16 to be constitutionally adequate, it must be construed to require advance written notice to an employee prior to any dismissal, allowing the employee a reasonable time to respond, either in person or in writing, to the proposed adverse action. So construed the court finds Rule 16 and the dismissal procedures of the defendant to be constitutional.

■ It seems to the court that procedurally an employee in the public sector including plaintiff in this case should be entitled to an advance notice in writing of his termination, a written statement of the reasons therefor, and a reasonable time allowed within which to respond thereto, i. e., ten days more or less. Before he is thus terminated he should be able to establish, for instance, a case of mistaken identity or by affidavit or perhaps by uncontroverted written or other evidence a conclusive explanation for his conduct such as a letter or direction from some other person in authority instructing him to perform the act which is assigned as grounds for discharge; or reliable evidence of alibi, etc. Another purpose of course of an advance notice is to advise the employee of the charges against him, in the nature of a pleading as it were, so that when the hearing is held the employee may know what the employer's claims are and permit him to prepare to meet the same. This latter purpose has been accomplished in this case by the letter of February 13, 1969.

■ Rule 16.42 of the University rules requires a written statement of the reasons for dismissal though it does not state that it must be in advance. It does state that the date "on which the dismissal is to be effective shall be named in this statement." This language is prospective. Indulging the presumption that the University intended to abide by procedural due process, it would seem that it must have intended to prescribe an advance notice. The rules are deficient, however, in that no time is given within which the employee may respond. To that extent and for lack thereof, the court holds the dismissal procedures contained in Rule 16 to be unconstitutional if not construed to require advance notice and a reasonable opportunity to respond allowed prior to termination. It is alleged in this case that the defendant was guilty of physical violence toward his supervisor and other employees and was thus dangerous. Provisions similar to those contained in the dismissal procedures of the Federal Civil Service Regulations for Federal employees, 5 C.F.R. § 752.202 would seem adequate to provide against such.[3] None such appear in the University of Minnesota Civil Service Regulations. The court by reference to 5 C.F.R. § 752.202 does not indicate that the Civil Service Rules of the University of Minnesota must duplicate the regulations for federal employees. In the case at bar the record is barren of any evidence as to the practices and procedures now being used by defendant. At this time the court does not undertake to prescribe what procedures must be followed by defendant except to state that a fair construction of Rule 16 consistent with due process would require an advance written statement of reasons for dismissal prior to the effective date of such dismissal so that an employee may appear informally or by letter before his supervisor or department head and answer any charges against him.

■ The facts in this case convince the court that plaintiff was discharged in violation of his constitutional right to due process. After 14 years of employment, he as with any other employee was entitled to an opportunity to have advanced written notice with time to respond. He did not have that here. The court expresses no opinion, of course, on the merits of plaintiff's discharge and makes no finding as to whether or not his dismissal was for just cause. The court does believe that plaintiff was at least entitled to notice before the effective date of his dismissal in order to correct or answer any false charges lodged against him. In this case plaintiff was

3. Such a construction would be in accord with Civil Service Regulations for federal employees 5 C.F.R. § 752.202 which read: "(a) * * * an employee against whom adverse action is sought is entitled to at least 30 full days' advance written notice stating any and all reasons, specifically and in detail, for the proposed action.
(b) * * * an employee is entitled to a reasonable time for answering charges and a notice of proposed adverse action and for furnishing affidavits in support of his answers. The reasonable time required depends on the facts and circumstances of the case, and shall be sufficient to afford the employee ample opportunity to prepare answers and secure affidavits. If the employee answers, the agency shall consider his answer in reaching its decision. The employee is entitled to answer personally, or in writing, or both personally and in writing. The right to answer personally includes the right to answer orally in person by being given a reasonable opportunity to make any representations which the employee believes might sway the final decision on his case, but does not include the right to a trial or formal hearing with examination of witnesses. * * *
(d) * * * When circumstances are such that the retention of the employee in an active duty status in his position may result in damage to Government property or may be detrimental to the interests of the Government or injurious to the employee, his fellow workers, or the general public, the agency may temporarily assign him to duties in which these conditions will not exist or place him on leave with his consent."

59 years of age and had been employed by the University for over 14 years. His chances for employment elsewhere are therefore minimal after his discharge by the University. In such circumstances the court finds sufficient irreparable harm to warrant the exercise of the court's equitable and injunctive powers

Even those courts which have tended to adhere to the shibboleth that employment by the government or a public body is a privilege and not a right, recognize and stand for the proposition that if a dismissal may bear upon reputation and the opportunity for future employment thereafter or affect an interest other than employment, due process both substantively and procedurally must be adhered to. So in Birnbaum v. Trussell, 371 F.2d 672 (2nd Cir. 1966) the court stated:

"The principle to be extracted from these cases is that, whenever there is a substantial interest, other than employment by the state, involved in the discharge of a public employee, he can be removed neither on arbitrary grounds nor without a procedure calculated to determine whether legitimate grounds do exist. Most of the cases, of course, involve accusations of disloyalty. However, the principle announced is applicable in this case because the potential injury to the public employee is similar." 371 F.2d at 678–679.

The court orders that plaintiff be reinstated as a University employee with such reinstatement to be retroactive to January 23, 1969. Nothing here said, however, is meant to prevent the defendant or its representatives from re-assigning plaintiff to different duties if they believe such is necessary to protect University property or other employees nor does this decision limit defendant from taking further action as to plaintiff's dismissal in accordance with the principles laid down herein.

A separate order has been entered. This memorandum will substitute for formal findings as required by Rule 52 of the Federal Rules of Civil Procedure.