Charles A. Loreto, J.
This is a proceeding brought under article 78 of the CPLR against the Port of New York Authority seeking the annulment of its decision relating to the method of promotion to the title of sergeant of a policeman of its police force.
The respondent is a bi-State agency created by interstate compact between the States of New York and New Jersey and by legislation it is declared “ a body, both corporate and politic ’ \ Its bi-State transportation operations are indeed impressive and vast, including six interstate vehicular crossings, the George Washington Bridge, the Lincoln and Holland Tunnels, the Bayonne Outerbridge Crossing and Goethals Bridge; two New York Marine terminals (Erie Basin and Brooklyn), the New Jersey Marine Terminals (Newark, Elizabeth and Hobokpn); two New Jersey airports (Newark and Teterboro); two New York airports (Kennedy and La Guardia), two inland *1059 freight terminals, one in New York and another in New Jersey. In addition, the interstate commuter railroad named the Port of Authority Trans-Hudson Corporation (PATH), which includes the Hudson River tunnels for their passage and the huge project now under construction in lower Manhattan, named the “ World Trade Center ”.
As a separate and distinct body politic in the operation of these extensive transportation and other facilities, understandably a large number of employees are required, among whom necessarily is a police force which is of significant size, now numbering 850 police officers, 100 sergeants, 40 lieutenants, eight captains and one inspector.
Prior to 1969, promotion of its police officers to the rank of sergeant was by process of written competitive examination and the establishment of eligible lists of two-year duration (unless sooner exhausted), from which promotions to the rank of sergeant were made in the order of standing on the list.
On May 19, 1969, respondent issued an announcement stating that there would be a police officer’s superior evaluation with the purpose of determining “ the eligibility of police personnel for promotion to positions of police sergeant and police lieutenant,” for which a written test was scheduled for June 28, 1969. The announcement further stated that the eligible list for sergeant would be permanent and not for a fixed or stated duration and not ranked on the basis of marks or grades and that “ appointments would be made as openings occur based on a careful consideration of the candidate’s qualifications as they pertain to the position to be filled.” By reason of this change, petitioner is an aggrieved police officer.
On the return date of the order to show cause by which this proceeding was instituted the demand for pendente lite relief sought by the petitioner and respondent’s motion to dismiss the petition upon objections in point of law, were withdrawn. A stipulation regarding the holding of the written examination for the position of sergeant, making it subject to the outcome of the litigation, was entered into.
On a subsequent submission of the matter to the Justice presiding in Special Term, Part I, an order directing a trial of the following issue was entered: ‘ ‘ Whether the determination by the Port of New York Authority, removing the position of Police Sergeant from the class of ‘ operating personnel ’ selected by competitive examination to that of ‘ managerial and professional personnel ’ selected by means of a management evaluation was a valid exercise of discretion. ’ ’
*1060 In support of the contention that the Authority’s action is a radical departure from the standard throughout the country, the petitioner has shown wherever the police force is of a significant size, advancement of the police officer to the next higher rank of sergeant has been and is pursuant to written competitive examination, with a list of limited duration. This is indicated as the standard practice or norm for that promotion, where the size of the police force is not too small.
It is noted that not many municipalities in the United States maintain a police force greater in number than that of the Authority. A survey of these municipalities would show that many of their employees are covered by civil service statutes. But the Authority in its employment practices has not been expressly made subject to the civil service statutes of the States of New York and New Jersey. As Matter of Andresen v. Rice (277 N. Y. 271) cited by petitioner’s attorney, deals with a civil service situation, it is not here applicable.
Surely one would surmise that since the police departments in other cities and towns are governed by civil service laws, there must be inherent in the system of employment and advancement thereby provided, distinct advantages — perhaps, merit that is not surpassable by any different approach to promotion in public employment.
In view of decisional authority and precedent, it would serve no purpose for this court to indulge in a balancing of merits of the civil service system long established as a standard against that proposed by the Authority in this instance.
The respondent has become a giant, whose enormity and use of its powers, is the subject of criticism in some quarters. Whether these should be curtailed is something within the domain of the two sovereignties which have created the Authority, to decide.
The source of the Authority’s power is found in the 1921 compact between the States of New York and New Jersey (L. 1921, ch. 154) which provides in article XIV: ‘1 The port authority * * * may appoint such officers and employees as it may require for the performance of its duties, and shall fix and determine their qualification and duties. ’ ’
The Authority is truly sui generis. In view of its unique nature as a body politic, the creation of two sovereign States — with broad and explicit powers, this court doubts that it may be equated with the usual departmental body or agency, whose exercise of discretionary powers is often the subject of judicial review. (See Matter of Plumbing, Heating & Aircon *1061 ditioning Contrs. Assn. v. Thruway Auth., 5 N Y 2d 420, 423, 424, 425; Matter of New York Post Corp. v. Moses, 10 N Y 2d 199, 205.)
Nevertheless, one may query whether the Authority is endowed with the complete freedom of private business in its employment practices. (Wieman v. Updegraff, 344 U. S. 183, 192; Olson v. Regents of Univ. of Minnesota, 301 F. Supp. 1356, 1359.) It may desire to use the most advanced personnel policies and practices of private business. It may desire, in fact, to innovate along these lines, as seems to be the case here. Yet, it does seem to appreciate a degree of restraint imposed upon it by reason of its public nature and function. This is implicit in the issue as posed by Special Term. From this viewpoint, it will be examined.
This court does not doubt that the Authority may exercise its sound judgment in its employment and promotion policies, and it may even utilize what it denotes as management evaluation in supplementing any written examination for promotion of a police officer to the rank of sergeant. But in doing this by purportedly transferring the position of police sergeant from the class of “operating personnel” to that of “managerial and professional personnel ”, in this court’s opinion, the Authority misbrands the duties of police sergeant. There is nothing in the listed duties of police sergeant which can correctly be termed as dealing with policy — duties ordinarily entrusted to a higher level of employee, whose salary tends in a measure to justify the responsibility of policy making.
For all its employees, the Authority has established three classifications: Service A for senior management (the Executive Director, General Counsel and department directors; Service B for Managerial and Professional Personnel (employee with supervisory, professional or technical positions) and Service G for all nonsupervisory employees. Into this pattern of classification, the Authority has now placed its police department, thereby giving this uniformity to all categories of employees.
Treating the Authority’s resolution as one subject to judicial review, the statement in Matter of Wanetick v. State Liq. Auth. (8 A D 2d 706, 707) cited by the petitioner, reads: “ When reasons are enumerated, such reasons, when challenged, will be scrutinized, to ascertain if the conclusion reached is or may be rationally supported.”
The Authority has stated its reasons for the change in its answer to the petition. Therefore, in the light of the issue as *1062 posed and Wanetick, to the extent it may be deemed applicable, the reasons stated by the Authority will now be examined. In paragraph 29 of the petition, it is alleged: “ The Authority’s action in the proceeding by an ‘ evaluation ’ in the selection of Sergeants in its police force is based on its determination that the position is ‘ managerial
In paragraph VT of its answer the Authority 1‘ admits among other reasons, the Authority’s action in proceeding by the said ‘ evaluation ’ in the selection of Sergeant in its police force is based on its determination that the said position is both supervisory and managerial and is ranked in the junior management classification as set forth by the Personnel Department of the Authority ” (italics supplied).
In personnel administration of business or industry (and this would apply whether the employment is in private or public sphere), there is a distinction to be noted in the definition of the words “management” and “managerial”. The former encompasses all the duties of the mission of the agency. The latter deals with the individual and his function in the agency. The conceded duties of the police sergeant embrace a supervisory function. In the discharge of his supervisory duties, the sergeant assigns work to patrolmen, maintains control of their work time and evaluates their work performance. In doing this, he helps to insure the carrying out at the level below himself of the policies, practices and procedures established at the higher level, i.e., the managerial level. This is the level which is responsible for the formulation and determination of policy, which may also be involved in its implementation. To describe the sergeant’s duties as embracing a “managerial” function appears to be a gross exaggeration of a realistic definition of the word.
What was said in reference to the National Labor Relations Board in International Ladies’ Garment Workers Union v. N. L. R. B. (339 F. 2d 116, 123) applies equally at bar. There the Circuit Appeals Court stated: “The Board has defined ‘ managerial employees ’ as 1 those who formulate, determine and effectuate an employer’s policies,’ American Federation of Labor, 120 N. L. R. B. 969, 972 ”. Another distinction that is to be noted is in salary recognition, the managerial being appreciably higher than the supervisory.
Merely in attributing here the status “managerial” to a sergeant does not visit him with such powers. It is the actual work performed by the employee, not the title, which determines his position, even though clothed with certain discretion in method or manner of discharge of his duties.
*1063 Thus it appears that of two reasons explicitly assigned for the promotional change, one is sustained and the second is found wanting. Must it follow then that the action taken by the Authority within the exercise of its powers of employment constitutes an abuse of its discretion? And this, where there has been no discernible alteration of the duties of sergeant?
In the court’s opinion, even if Wanetick were applicable, it would not impose the requirement that all reasons given by the Authority for its action be sustained. The consideration of the reasons given does serve the purpose of inquiring into the good faith of the agency.
Petitioner seriously questions the propriety of any motivation of the Authority in announcing the change. It is pointed out that the announcement was made shortly after an incident at a graduation ceremony wherein sergeants participated in a demonstration, which incurred the displeasure of the executive director of the Authority.
With some plausibility, it may be feared that a patrolman who passes the written noncompetitive examination for promotion to the rank of sergeant, in the further “evaluation” process, if he ever had participated in a demonstration, or committed any other action, displeasing to a superior, would probably be held back, thereby repressing the exercise of his constitutional right of free expression. The possibility of the infringement of a constitutional or other right of the employee does not afford a sound legal reason for a judicial vitiation of the Authority’s promotional resolution. Whatever other recourse would be available to the aggrieved when a wrong is committed in the violation of any right, would then have to be pursued. Nor would the mere possibility of abuse in selection for promotion to sergeant, even if believed greater than under the prior promotional method, be sufficient to sustain petitioner.
The test where abuse of discretion is at issue is “whether there is any rational basis for the decision of the Authority ’ ’. (Matter of Austin v. Rohan, 8 A D 2d 647.) The court cannot agree that the record is bereft of showing any rational basis for the Authority’s action.
The issue presented is answered in the affirmative.
It should be noted that the parties have in effect presented proof directed -to the entire petition and answer, and in view of the foregoing opinion, the petition should be dismissed.