James Michael McCONNELL, Plaintiff,

v.

Elmer R. ANDERSON, Lyman A. Brink, Fred A. Cina, Daniel C. Gainey, Albert V. Hartl, Marjorie J. Howard, Herbert L. Huffington, M.D., Fred J. Hughes, Lester A. Malkerson, George W. Rauenhorst, Neil C. Sherburne, John A. Yngve, and Ralph H. Hopp, Defendants.

No. 4–70 Civ. 297.

United States District Court,
D. Minnesota,
Fourth Division.

Sept. 9, 1970.

John R. Goetz and Stephen M. Goldfarb, Minneapolis, Minn., for plaintiff.

Moore, Costello & Hart, St. Paul, Minn., by A. Patrick Leighton and Richard A. Moore, R. Joel Tierney, Minneapolis, Minn., for defendants.

NEVILLE, District Judge.

Squarely presented to the court for decision is a case where the University of the State of Minnesota, acting through its Board of Regents, rejected as an employee an otherwise qualified male applicant because of his public profession that he is an homosexual. The question raised is whether under the 1871 Civil Rights Act, 42 U.S.C. § 1983, the Board of Regents, acting "under color of any statute, ordinance, regulation, custom, or usage, of any State * * *" deprived plaintiff as an homosexual and as a citizen of the United States "of any rights, privileges or immunities secured by the Constitution and laws," specifically the due process, privileges and immunities, and equal protection clauses of the Fourteenth Amendment to the United States Constitution and collaterally the freedom of speech or "expression" clause of the First Amendment. The court has found no authority directly bearing on the question and none of the cases presented by either counsel are directly on point. The case at bar thus appears to be one of first impression.

The facts are largely undisputed. Plaintiff, 28 years of age, is a librarian holding a Master's degree. He was last employed during the 1969–70 school year at the Park College Library in Missouri. In late December of 1969 he sent a number of letters of inquiry to prospective employers and received a favorable response from the librarian at the University of Minnesota. An interchange of correspondence and a personal interview followed, an employment application was submitted and by letter dated April 27, 1970 plaintiff was advised "This is to confirm the telephone conversation * * * in which we agreed to your appointment to the position of Head of the Cataloging Division in our St. Paul

Campus Library * * * [carrying] an annual salary of $11,000 * * * to begin on or about July 1, 1970." Despite the language of this letter, it is acknowledged by plaintiff that no contract of employment was ever perfected, since the formal necessary approval by the Board of Regents was never forthcoming.

Plaintiff moved to Minneapolis and on or about May 18, 1970 publicly applied to the appropriate authority for a marriage license, seeking marriage to another man, one Jack Baker, a University of Minnesota law student. Both men freely admitted to the news media that they were and are homosexuals. This rather bizarre occurrence drew substantial publicity, including pictures in the newspapers of the two men, though no reference was made to plaintiff's connection with or future employment by the University.

Plaintiff's appointment was scheduled to come routinely before the University Board of Regents for consideration at its July 1970 meeting. Prior thereto, a committee of the Regents was appointed which met twice, the latter time on July 9, 1970 at which meeting 11 of the 12 Regents were in attendance. The committee accorded plaintiff and his lawyers a personal interview and hearing. The following recommendation was thereinafter adopted unanimously:

> "That the appointment of Mr. J. M. McConnell to the position of the Head of the Cataloging Division of the St. Paul Campus Library at the rank of Instructor not be approved on the grounds that his personal conduct, as represented in the public and University news media, is not consistent with the best interest of the University."

Under the Board's rules no appearance is permitted by anyone at its meetings but the committee's recommendation was duly adopted by the Regents at its regular meeting the next day.

Plaintiff testified that he is presently receiving no earnings whatsoever; that he declined a tendered position elsewhere in reliance on his University of Minnesota employment, which position has now been filled; that he has approximately $200 total assets. He professes publicly his homosexuality. He is a member of an organization known as FREE, standing for "Fight Repression of Erotic Expression," though apparently its name recently has been changed. This organization is comprised of homosexuals and maintains headquarters in the University of Minnesota Student Union. Plaintiff is in no way clandestine about his homosexuality. On cross-examination he denied that he had ever practiced or committed the crime of sodomy within the State of Minnesota, though he is presently living at the same address as his intended "spouse" Jack Baker. He stated unequivocally that he has never advocated the practice of homosexuality by anyone else nor induced any other person to engage in its pursuits.

The chairman of the Regents' aforesaid committee was a witness at the trial. Counsel for the University stated to the court that this is the first case in at least ten years where a rejection has occurred against the favorable recommendation of the academic staff. The Regents' position, with no dissenting vote, is that even though plaintiff may be a very capable librarian, his professed homosexuality connotes to the public generally that he practices acts of sodomy, a crime under Minnesota law; that the Regents have a right to presume that by his applying for a license to marry another man plaintiff intended, were the license to be granted, to engage in such sodomous criminal activities; that the Regents cannot condone the commission of criminal acts by its employees and thus plaintiff has rendered himself unfit to be employed.

Several observations are in order:

(1) Though originally the case came before the court on a motion for temporary restraining order and preliminary injunction, both counsel have stipulated the case may be treated on the present record as fully tried and submitted on the merits as provided in Rule 65(a) (2)

of the Federal Rules of Civil Procedure. At the hearing the questions of sovereign immunity and effective service of process on some of the defendants were raised, but since defendants make no mention nor point thereof in their brief, the court does not consider nor deem urged these questions.

(2) No claim is made by plaintiff that he actually has or had an enforceable employment contract and thus he claims no tenure rights of the type which under the University rules would require a showing of good cause before termination of employment.

(3) No claim is asserted under the 1964 Civil Rights Act, 42 U.S.C. § 2000e—2, which makes it an unlawful employment practice for any employer, private or public "to fail or refuse to hire or to discharge any individual * * because of such individual's race, color, religion, sex or natural origin." The term homosexual is significantly omitted from this statute and thus it is of no assistance to a decision of the case except generally to indicate to the court the adoption of a national policy by the Congress against discriminatory hiring and employment practices and for equal employment opportunities.

(4) No medical or other expert witnesses were called by either party to opine on the habits, proclivities, attitudes or attributes of an homosexual person. The court is therefore left with but the dictionary definition of the term.

(5) No attack was made on plaintiff's competency as a librarian, nor was there any attempt to show that his homosexual tendencies might affect the performance of his duties or his efficiency as a librarian.

(6) Nowhere in the rules and regulations adopted by the University is there any mention of homosexuals nor does the application form in any way inquire into an applicant's sexual habits or practices, heterosexual or otherwise.

(7) Plaintiff will not be in a position to handle or be exposed to information involving national security or so called "classified" information important to the national interest.

In the absence of any controlling statute, the question remains as to whether it is a violation of plaintiff's constitutional rights to refuse him public employment because he proclaims that he is an homosexual.

No case in the United States Supreme Court has been found where a person was either discharged or the prospective employer refused to hire him on the grounds that he was an homosexual or that specific acts of homosexuality were committed. In the Circuit courts two cases have been found in the District of Columbia involving the same plaintiff. They hold that an admission that one is an homosexual, standing alone and without evidence of any practice thereof will not justify the Civil Service Commission in refusing to certify him as eligible for employment based on a determination of "immoral conduct". Scott v. Macy, 121 U.S.App.D.C. 205, 349 F.2d 182 (D.C.Cir.1965); Scott v. Macy, 131 U.S.App.D.C. 93, 402 F.2d 644 (1968). These cases come as close as any to a refusal to hire for homosexuality as distinguished from a discharge from existing employment. There appear to be no Circuit court cases where a government employee has been discharged for homosexuality *per se*. There are several cases where employees have been discharged for homosexual acts which are specified by the discharging agency and either clearly supported in the evidence before it, or simply not contested by the employee. Most of the cases reviewing such discharges for reasonableness have simply deferred to the agency determination thereof. Vigil v. Post Office Dept., 406 F.2d 921, 925 (10th Cir. 1969); Schlegel v. United States, 416 F.2d 1372, 1378 (Ct.Cl.1969); Anonymous v. Macy, 398 F.2d 317, 318 (5th Cir. 1968); Taylor v. United States Civil Service Comm'n, 374 F.2d 466, 470 (9th Cir. 1967). The District of Columbia Circuit, however, has indicated its willingness to look behind the agency's determination, Dew v. Halaby, 115 U.S.

App.D.C. 171, 317 F.2d 582, 587–589 (D.C.Cir.1963), and where a violation of constitutional due process is found, it has not hesitated to substitute its judgment for that of the agency. Norton v. Macy, 417 F.2d 1161, 1164 (D.C.Cir. 1969).

In *Norton* the court refused to affirm a discharge of an employee absent a further satisfactory showing of likelihood of effect on efficiency in employment. An article in 58 Geo.L.J. 632 (1970) comments on the *Norton* case and reviews the judicial decisions to date. See also Morrison v. State Board of Education, 1 Cal.3d 214, 82 Cal.Rptr. 175, 461 P.2d 375 (1969), where the court reversed a discharge for homosexuality, finding as to a teacher no reliable indication that such characteristic and, a noncriminal physical relationship would impair his teaching effectiveness. The court there said:

> "This lack of evidence is particularly significant because the board failed to show that petitioner's conduct in any manner affected his performance as a teacher. There was not the slightest suggestion that petitioner had ever attempted, sought, or even considered any form of physical or otherwise improper relationship with any student. There was no evidence that petitioner had failed to impress upon the minds of his pupils the principles of morality as required by section 13556.5 of the Education Code. There is no reason to believe that the Schneringer incident affected petitioner's apparently satisfactory relationship with his co-workers." 1 Cal. 3d at 236, 82 Cal.Rptr. at 192, 461 P.2d at 392.

 The courts have abandoned the concept that public employment and the opportunity therefor is a mere privilege and not a constitutionally protected right. As stated in this court's opinion in Olson v. Regents of University of Minnesota, 301 F.Supp. 1356 (D.Minn. 1969):

"It was once held that a citizen has no 'constitutional right to be a policeman' and that governmental employment was an unprotected privilege and not a right. See the opinion by Mr. Justice Holmes, as a member of the Massachusetts Supreme Judicial Court, in McAuliffe v. Mayor of New Bedford, 155 Mass. 216, 220, 29 N.E. 517 (1892). More recently, however, this right-privilege distinction as a limitation on substantive or procedural due process affecting employment in the public sector has been seriously eroded if not virtually rejected. See *e. g.*, Wieman v. Updegraff, 344 U.S. 183, 73 S.Ct. 215, 97 L.Ed. 216 (1952); Slochower v. Board of Higher Education, 350 U.S. 551, 76 S.Ct. 637, 100 L.Ed. 692 (1956); Pickering v. Board of Education, 391 U.S. 563, 88 S.Ct. 1731, 20 L.Ed.2d 811 (1968); Greene v. McElroy, 360 U.S. 474, 79 S.Ct. 1400, 3 L.Ed.2d 1377 (1958); Dixon v. Alabama State Board of Education. 294 F.2d 150 (5th Cir.), cert. denied, 368 U.S. 930, 82 S.Ct. 368, 7 L.Ed.2d 193 (1961); and Kelly v. Wyman, 294 F.Supp. 893 (S.D. N.Y.1968) (three-judge court); W. W. Van Alstyne, The Demise of the Right-Privilege Distinction in Constitutional Law, 81 Harv.L.Rev. 1439 (1968). 'The focus of inquiry has shifted from identification of individual rights to an examination of the reasonableness of governmental action.' Note, Dismissal of Federal Employees—The Emerging Judicial Role, 66 Colum.L. Rev. 719, 734 (1966). Thus in Wieman v. Updegraff, *supra*, 344 at 192, 73 S.Ct. at 219 the Supreme Court stated:

'We need not pause to consider whether an abstract right to public employment exists. It is sufficient to say that constitutional protection does extend to the public servant whose exclusion pursuant to a statute is patently arbitrary or discriminatory.' " 301 F.Supp. at 1359

Particularly apropos here is the language of Chief Circuit Judge Bazelon in Scott v. Macy, 121 U.S.App.D.C. 205, 349 F.2d 182 (1965):

"Appellant is an applicant for public employment, and thus may have less statutory protection against exclusion than an employee. But he is not without constitutional protection.[8] The Constitution does not distinguish between applicants and employees; both are entitled, like other people, to equal protection against arbitrary or discriminatory treatment by the Government. The Executive may have discretion in hiring or firing, but '[d]iscretionary power does not carry with it the right to its arbitrary exercise.' Shachtman v. Dulles, 96 U.S. App.D.C. 287, 290, 225 F.2d 938, 941 (1955).

8. See Torcaso v. Watkins, 367 U.S. 488, 81 S.Ct. 1680, 6 L.Ed.2d 982 (1961); Shelton v. Tucker, 364 U.S. 479, 81 S.Ct. 247, 5 L.Ed.2d 231 (1960); In re Summers, 325 U.S. 561, 571, 65 S.Ct. 1307, 89 L.Ed. 1795 (1945); United Public Workers of America v. Mitchell, 330 U.S. 75, 100, 67 S.Ct. 556, 91 L.Ed. 754 (1947); Hunter v. McLaughlin, 102 U.S.App.D.C. 293, 252 F.2d 857 (1958); Eaton v. Grubbs, 329 F.2d 710 (4th Cir. 1964). In Joint Anti-Fascist Refugee Committee v. McGrath, Mr. Justice Jackson, concurring, stated: 'The fact that one may not have a legal right to get or keep a government post does not mean that he can be adjudged ineligible illegally. Perkins v. Elg [307 U.S. 325, 349, 59 S.Ct. 884, 83 L.Ed. 1320].' 341 U.S. 123, 185, 71 S.Ct. 624, 655, 95 L.Ed. 817 (1951)." 349 F.2d at 183–184.

■ Though by current standards many persons characterize an homosexual as engaging in "immoral conduct", "indecent" and "disgraceful", it seems clear that to justify dismissal from public employment, or as the court finds in this case to reject an applicant for public employment, it must be shown that there is an observable and reasonable relationship between efficiency in the job and homosexuality. In the case at bar, of course, since plaintiff never has been permitted to enter on his duties, there is no history as to his performance or the possible claimed effect of his homosexuality. The Regents are of necessity speculating and presuming. Plaintiff's position will not expose him to children of tender years who conceivably could be influenced or persuaded to his penchant. What he does in his private life, as with other employees, should not be his employer's concern unless it can be shown to affect in some degree his efficiency in the performance of his duties. See Norton, supra, where the court stated:

"* * * But the notion that it could be an appropriate function of the federal bureaucracy to enforce the majority's conventional codes of conduct in the private lives of its employees is at war with elementary concepts of liberty, privacy, and diversity. * *" 417 F.2d at 1165

■ An homosexual is after all a human being, and a citizen of the United States despite the fact that he finds his sex gratification in what most consider to be an unconventional manner. He is as much entitled to the protection and benefits of the laws and due process fair treatment as are others, at least as to public employment in the absence of proof and not mere surmise that he has committed or will commit criminal acts or that his employment efficiency is impaired by his homosexuality. Further, the decided cases draw a distinction between homosexuality, i. e., sexual propensity for persons of one's own sex and the commission of homosexual criminal acts. Homosexuality is said to be a broad term involving all types of deviant sexual conduct with one of the same sex, but not necessarily criminal acts of sodomy.

■ Plaintiff does not have an inalienable right to be employed by the University but he has a right not to be discriminated against under the Fourteenth Amendment due process clause. He has a constitutional right that the terms of his public employment which he must meet be "reasonable, lawful and

non-discriminatory." Slochower v. Board of Higher Education, 350 U.S. 551, 76 S.Ct. 637, 100 L.Ed. 692 (1956); Keyishian v. Board of Regents of the University of New York, 385 U.S. 589, 87 S.Ct. 675, 17 L.Ed.2d 629 (1967); Wieman v. Updegraff, 344 U.S. 183, 73 S.Ct. 215, 97 L.Ed. 216 (1952); Schware v. Board of Bar Examiners of New Mexico, 353 U.S. 232, 234, 239, 77 S.Ct. 752, 1 L.Ed.2d 796 (1957). A discriminatory deprivation of employment is a deprivation of liberty and property under the Fourteenth Amendment, Greene v. McElroy, 360 U.S. 474, 492, 79 S.Ct. 1400, 3 L.Ed.2d 1377 (1959); Dent v. West Virginia, 129 U.S. 114, 121–122, 9 S.Ct. 231, 32 L.Ed. 623 (1889).

The "purges" of the late 1940's and 1950's of homosexuals in the federal government service, particularly in the Department of State are not authority in the case at bar. There clandestine homosexuals, when discovered, were claimed to have become the subject of possible blackmail. See 82 Harv.L.Rev. 1738 (1969). Here plaintiff is very open about his deviation, and in any event is not dealing with classified or secret information important to the national security.

Plaintiff argues that he had a perfect right to apply for a marriage license and that such is "symbolic speech" within the doctrine of such cases as Tinker v. Des Moines School District, 393 U.S. 503, 89 S.Ct. 733, 21 L.Ed.2d 731 (1969), and Saunders v. Virginia Polytechnic Institute, 417 F.2d 1127 (4th Cir. 1969).

This might well be a useful argument to plaintiff had he been arrested for some asserted law violation at the time of his attempt to secure a marriage license. Plaintiff argues that it was because of the publicity in the news media (mentioned by the Regents in its resolution) that was attendant upon his exercise of his right of free expression that the University was motivated to reject his employment and thus indirectly he is being denied his right of free expression under the First Amendment. Though there may be merit in such contention it is not necessary for the court to decide this nor any other alleged constitutional violation in view of the holding above relative to due process.

 Since the case has been submitted for decision on the merits, the question of irreparable harm required for a preliminary injunction resolves itself into the question of whether there is an adequate remedy at law. Inasmuch as plaintiff has no contract of employment he has no action for damages thereunder. The hiring season, as the court understands for educational institutions occurs in spring and early summer and if plaintiff is denied employment now, in all probability he may not be able to secure employment in his field at least until next year. The court finds this is a case where no adequate remedy at law exists.

A separate order granting an injunction has been entered. This memorandum opinion will serve in lieu of findings of fact as provided by Rule 52(a) of the Federal Rules of Civil Procedure.