Richard L. Hollow, Robert W. Ritchie, Knoxville, Tenn., for plaintiffs.

Robert A. Finley, Knoxville, Tenn., for defendants.

**Harold DEXTER and Michael S. Hosford**

v.

**Joe C. FOWLER and Duane Ausetts.**

**Civ. No. 3–74–124.**

United States District Court, E. D. Tennessee, N. D.

Sept. 17, 1974.

### MEMORANDUM

TAYLOR, District Judge.

This action was filed by two Knoxville policemen, Harold Dexter and Michael S. Hosford, alleging that defendants Joe C. Fowler, Chief of Police, and Duane Ausetts, Director of Public Safety,[1] acting individually and collectively under the color of state law, violated certain rights secured under the First and Fourteenth Amendments to the Constitution. 42 U.S.C. § 1983. Jurisdiction accordingly lies under 28 U.S.C. § 1343.

Plaintiffs request the Court to enjoin the defendants' further use of "punish-

1. The Director of Public Safety is charged with the general administration of the Police and Fire Departments. Art. I, § 201 Knoxville Law Enforcement Manual (Exhibit 9).

ment beats" as a method of disciplining police officers outside the protective provisions of Section 75 of the Knoxville City Code.[2] Prior to the hearing of this trial, Dexter, twenty-four years of age, and Hosford, twenty-five years of age, had served three and three and a half years, respectively, as policemen with the Knoxville Police Department.

On March 28, 1974, plaintiffs received an inter-departmental memorandum from Fowler, which reassigned plaintiffs from their previous patrol duties[3] to guarding the Police Training Range in Blount County, adjacent to Knox County and, consequently, outside the jurisdiction of the Knoxville Police Department. (Exhibits 1, 2, 3). The federally-funded facility was then under construction and will serve ultimately as a training complex for law enforcement officers. Presently nearing completion,[4] the Police Range is valued at approximately $200,000.00 and houses various firearms in addition to 5,000 rounds of ammunition. The assignment of Hosford and Dexter, along with three other officers, to guard the Police Range was made by Fowler pursuant to an earlier request made by Ausetts to provide some on-premises police security for the complex. Ausetts testified that his concern for the property's protection was based upon several, although relatively minor, acts of vandalism committed at the construction site, and, more recently, the fact that weapons and ammunition have been stolen from military establishments. Due to the ongoing construction of the Police Range, there is no need for police security from 8:00 a. m. to 4:00 p. m. Rather, the need for security is present from the hours of 4:00 p. m. to 8:00 a. m. and this need is reflected in plaintiffs' work schedule. (Exhibit 4). It is appropriate at this point to note that plaintiffs suffered no loss in pay,

seniority or any other employment benefits or opportunities as a result of their assignment from patrol duty to security duty at the Police Range. Plaintiffs, however, argue that the punitive aspects of their recent reassignment stem from the disparity between their present job conditions and requirements at the Police Range and those of their former patrol assignment. More particularly, plaintiffs emphasize the following differences:

1. They are required to punch a time clock at the Police Range as opposed to being present for a roll call at the Police Department Headquarters.

2. There exists no eating facilities (restaurant, etc.) and, accordingly, they must bring their own meals. However, as Exhibit 5 indicates, the range does have indoor facilities and presently includes a kitchen.

3. When they first arrived there was no telephone at the Police Range; however, more recently a direct phone line to the Knoxville Police Department has been installed.

4. Because the Range was outside Knox County they had no authority to make arrests. Instead, they were directed to contact the Blount County Sheriff's Department in the event they needed to make an arrest.

5. They were required without any additional compensation to drive an additional distance to and from work. For example, Hosford drives 49.6 miles round trip as compared with his former distance of 16 miles.

6. They are required to provide a doctor's statement for one day's absence due to illness in comparison with the standard three-day grace period.[5]

2. Section 75 of the Code provides for charges and hearing in cases of suspension, discharge or other punishment of city employees. (Exhibit 8)

3. During Hosford's previous three year service with the force his assignments had included a walking beat, working on a paddy

wagon, and patrol car service. Immediately preceding his assignment to the police training range he was working in a patrol car.

4. See Exhibit 5.

5. Knoxville Police Department Law Enforcement Manual. Art. VI, § 105(3).

Plaintiffs contend that the assignment of providing security protection for the Police Range was punishment specifically directed towards them and in retaliation for their vocal and persistent opposition to various police work policies and their support of pay raises for policemen. For example, approximately two months prior to his reassignment, Dexter participated in several passive demonstrations in the form of mass off-duty police gatherings before City Council meetings where the subject of the meeting was proposed pay raises for the policemen. On at least two other occasions, Dexter expressed vocal dissatisfaction with a proposed work schedule for the policemen and a particular proposed merit plan. Dexter and Hosford both attribute their reassignment, and the reassignment of other officers, to their ostensible opposition to the City Administration, and thus argue they are being summarily punished for the exercise of their protected First Amendment rights. Dexter also points out that he has not received a third year step increase, which he stated is normally automatic. He argues that this denial of a step increase is due to the above activities.

Through stipulation, it was shown that four other officers have been reassigned to arguably less desirable positions in the past year; however, in no instance was such reassignment accompanied by a loss in pay, seniority or other employment benefits and opportunities.

Defendant Ausetts testified that due to his concern over the facility's security he approached Fowler and requested him to prepare a roster for the Police Range assignment. He further testified that he was not aware of plaintiffs' position on work related questions at the time the roster was prepared for guard duty.

Fowler testified that the practice of "punishment beats" [6] had been terminated upon his assuming the office of Chief of Police in 1970. He also testified that he was not aware of plaintiffs' activities supposedly adverse to the city administration policies and that the actual assignment roster was prepared by the various assistant chiefs and captains in the Department. Finally, Fowler testified that step increases were not automatic and noted that to date several of Dexter's co-officers' step increases had also been denied.

Having carefully examined the facts and the law in this case, it is the opinion of the Court that neither plaintiff has proved by a preponderance of the evidence that the defendants, either individually or collectively, violated any of plaintiffs' rights under the First or Fourteenth Amendments of the Constitution. Thus, the Court concludes that defendants' actions in reassigning plaintiffs from patrol duty to security duty at the Police Training Range were not designed to punish them for their exercise of any federal constitutional right. It is apparent from the testimony that defendants' reassignment of plaintiffs was grounded upon a belief that such duty assignments were necessary to protect Police Department property.[7] The fact that this was the first time police officers had been placed outside of the Department's jurisdiction does not shed light on the reason for the reassignment since this is the first time such a complex has existed outside Knox County.

The Court cannot sit in review of the day-to-day administrative actions of a police where such actions are made in good faith, do not appear to be made arbitrarily or capriciously, and, are not made in retaliation against an individual for the lawful exercise of his constitutionally protected rights. Such review

---

6. A "punishment beat" for a police officer is essentially a reassignment under unfavorable conditions for purposes of punishment.

7. Olson v. Regents of Univ. of California, 301 F.Supp. 1356 (D.Minn.1969) (holding wrongful the termination of University employee—" [n]othing here said, however, is meant to prevent the defendant or its representatives from re-assigning plaintiff to different duties if they believe such is necessary to protect University property . . . " at 1363).

would prohibitively burden the administration of the police department. It may well be that what appears to the Court to be internal police action taken out of a necessity to protect police property will differ substantially from plaintiffs' own subjective interpretation of the same action. However, the Court is not persuaded that defendants' decision to reassign them to the security duty was, in fact, based on their former activities ostensibly in opposition to the City Administration. In this regard, plaintiffs' reliance on Pickering v. Board of Education, 391 U.S. 563, 88 S. Ct. 1731, 20 L.Ed.2d 811 (1968) is misplaced since in that case the Board of Education *explicitly stated* and the proof showed that *dismissal* of plaintiff was based upon his attack of the Board of Education. Here plaintiffs have failed to prove that such constitutionally-impermissible motives lay behind defendants' actions. Similarly, the case of Flynn v. Giarrusso, 321 F.Supp. 1295 (D.C.1971), since there the district court went no further than to say that certain regulations governing police statements were unconstitutionally vague.

Plaintiffs' action is accordingly dismissed.