Jasen, J.
(concurring). While I agree with the majority that the case should be remitted to the Supreme Court for further proceedings, I do so for the reasons that follow.
This case involves the provisions of the Human Rights Law (Executive Law, §§ 290-301) which prohibit employment discrimination by reason of disability. The issue presented is whether the court below erred as a matter of law in determining, without a hearing and without requiring respondents to submit an answer, that petitioner’s medical condition rendered him unable to perform his employment duties and, therefore, falls outside the statutory protections.
Several specific provisions of the statute apply here. Section 296 (subd 1, par [a]), of the Executive Law prohibits employment discrimination on the basis of disability and the recently enacted amendment to subdivision 21 of section 292 defines a covered disability as one which does “not prevent the complainant from performing in a reasonable manner the activities involved in the job or occupation *534 sought.” Prior to this amendment, the statute’s protection did not apply to disabilities which were somehow related to the nature of the employment. (Matter of State Div. of Human Rights v Averill Park Cent. School Dist., 46 NY2d 950.) But, as we'noted in Matter of Westinghouse Elec. Corp. v State Div. of Human Rights (49 NY2d 234,238), the statute’s coverage was extended by the amendment to provide protection to individuals with a wider range of disabilities, excluding from its coverage only those disabilities which would actually impair or interfere with the ability to perform the employment activities involved. Henceforth, the mere fact that a medical, mental or physical condition is related to the employment sought is no longer sufficient justification for disparate treatment of an employee or applicant. The nexus between the disability and the employment involved must be “individualized”. No mere abstract or theoretical connection is sufficient. Rather, the particular disability must be such that it prevents the particular individual from performing in a reasonable manner the particular activities involved in the job or occupation before an employer is permitted to terminate the individual employee or treat him differently than others not similarly disabled.
Nevertheless, though an applicant or employee need not be able to perform perfectly to be entitled to the statutory protections, still he must be able to perform reasonably “the activities involved” — not just some or most or a reasonable proportion of those activities. The statute bars discrimination against a disabled individual who is able to do what the job or occupation requires. It does not mandate that an employer hire an individual who cannot perform the work involved. While the amended statute surely has a remedial purpose and necessitates accommodation of the disabled, it does not require absurd results.
The statute as amended prohibits discrimination against a disabled individual who can reasonably perform the tasks required. But it does not entitle any individual, whether or not disabled, to employment which that person can perform only in part. Indeed, any other interpretation is entirely inconsistent with the unamended clarifying provision in section 296 (subd 3-a, par [c]) which unambig *535 uously states that “nothing contained * * * in subdivision one of this section [the subdivision claimed to have been violated] shall be construed to prevent the termination of employment of any person who is physically unable to perform his duties”. (Emphasis supplied.)* Hence, the relevant question is not whether petitioner can in some general sense “perform the job in a reasonable manner” — any more than it is whether he can perform it “in a perfect manner” or whether his disabling condition is “somehow related” to the ability to engage in the activities of the job. Rather, as the statute and logic dictate, the pertinent question is whether petitioner can actually perform the particular “activities involved in the job” in a reasonably acceptable manner.
Before applying the foregoing to the specific facts of this case, it is essential to recognize that petitioner here was a probationary employee and as such he was subject to the generally “unfettered right” of an employer to terminate a probationer. (James v Board of Educ., 37 NY2d 891, 892.) Indeed, an employer may discharge a probationary employee without reasons or a hearing unless the employee has demonstrated that the termination was for a constitutionally impermissible purpose or in violation of a statutory proscription. (Matter of Stanziale v Executive Dept., Off. of Gen. Servs., 55 NY2d 735, 737; Matter of Holbrook v State Ins. Fund, 54 NY2d 892, 894.) Because a probationer has no vested right to continued employment (Matter of New York City Bd. of Educ. v Batista, 54 NY2d 379, 382), he need not be afforded a hearing or a statement of reasons unless there is no lawful basis for his termination (Matter of Talamo v Murphy, 38 NY2d 637, 639; cf. Board of Regents v Roth, 408 US 564, 578) or the record discloses a genuine issue concerning the infringement of a constitutional right (cf. Perry v Sindermann, 408 US 593, 598). Moreover, as we have consistently held, judicial examination of an administrative determination should be limited to a review of the record for substantial evidence that supports a rational and lawful basis for that determina *536 tion. (Matter of Pell v Board of Educ., 34 NY2d 222, 230; Matter of Howard v Wyman, 28 NY2d 434, 438.)
Here, petitioner’s probationary promotion was terminated on account of “unsatisfactory probationary period” and he was returned to his former position. In response to petitioner’s article 78 petition alleging unlawful discrimination by reason of disability, respondents explained that petitioner was physically unable to perform the work in his probationary position. In support of that determination, respondents relied upon a medical report of their cardiologist consultant which outlined petitioner’s medical problems and which concluded that he “is not qualified to do full duty in [the probationary position]. He is to do no excessive stair climbing.” Petitioner contends that he is capable of stair climbing and, more importantly, he challenges the bona fides of the medical report. He claims that it contradicts a report of the same cardiologist issued one week earlier which did not declare any disqualification but instead stated that the petitioner “is returned to a full duty status”. There being no apparent explanation for the discrepancy between the two reports, petitioner argues that the later one is too questionable to support respondents’ determination. He further insists that a hearing is warranted to determine the sufficiency of respondents’ evidence and the lawfulness of the reasons for his termination in light of the antidiscrimination provisions of the Human Rights Law.
The resolution of the issues thus presented requires a reconciliation of two seemingly competing mandates. On the one hand, as our decisions have recognized, an employer is normally entitled to discharge an employee at any time during the nonbinding probationary period without the inconvenience and cost of a formal hearing and, indeed, even without giving reasons, whenever the employer is dissatisfied with the probationer. On the other hand, a disabled employee is entitled to the safeguard of the statutorily required “individualized” test to insure that he is not discharged for discriminatory reasons. Stated another way, this is n. case in which the employer’s general authority summarily to terminate a probationary employee must be reconciled with the special protection against discrimination afforded to disabled employees.
*537 Supreme Court dismissed the petition without first requiring respondents to answer petitioner’s complaint. While a probationer is normally subject to summary discharge without a hearing, it is necessary in a case such as this for the trial court to determine whether, indeed, there is any legitimacy to petitioner’s claim of unlawful discrimination or whether, on the other hand, there is a rational and lawful basis for respondents’ action. For that purpose, respondents should be required to answer petitioner’s complaint and therein to state more thoroughly and clearly the reasons for its determination. Not only might this procedure obviate a hearing which our decisions have repeatedly held is not usually required when probationary employment is involved, but it will also conform to the protective mandate of the antidiscrimination law which requires that its provisions “be construed liberally for the accomplishment of the purposes thereof” (Executive Law, § 300). Moreover, a detailed answer will provide a more adequate record enabling judicial review to determine whether there is any basis for petitioner’s claim of discrimination, which, if substantiated, must be enjoined. (A similar proceeding was required in Drown v Portsmouth School Dist., 435 F2d 1182; and in Olson v Regents of Univ. of Minn., 301 F Supp 1356.)
The record as it presently stands is unclear on several matters which are essential to determine whether petitioner has in fact been subject to unlawful discrimination or whether respondents do have the requisite lawful basis for terminating him. The record is unclear whether petitioner was terminated solely because of his disabling condition or whether his probationary employment period was unsatisfactory for other reasons as well. It is unclear whether the initial medical report was intended to state that petitioner was actually qualified to return to his probationary position or whether it merely stated a fact, that after an extended absence from work due to illness, he was no longer ill. Moreover, if the former was intended, it is unclear whether there is any basis for the discrepancy between the initial report and the second which stated that petitioner was then unqualified to perform his probationary position. Additionally, it is unclear whether petition *538 er’s disqualification from “full duty” as stated in the second report means merely that he is unable perfectly to perform all the activities involved, or whether he is actually unable to perform some of them to any reasonable extent. Finally, that report’s reference to “excessive stair climbing” is unilluminating and leaves unanswered whether petitioner is unable to perform the amount of stair climbing actually required in the performance of his duties or just some abstract excessive amount.
In order that a more complete record be developed which would permit a sufficient review of both petitioner’s claim of discrimination and respondents’ basis for its action, respondents should be required to answer petitioner’s complaint, stating more precisely and explaining more fully their reasons for terminating petitioner’s probationary employment and, thereby, clarifying the matters thus far left uncertain. Upon receiving respondents’ answer and supporting affidavits, the trial court should decide whether respondents have provided substantial evidence that the basis for their action did not disregard the “individualized test” for disability discrimination.
Chief Judge Cooke and Judges Jones, Meyer, Simons and Kaye concur with Judge Wachtler; Judge Jasen concurs in a separate opinion.
Order reversed, with costs, motion to dismiss denied and matter remitted to Supreme Court, Kings County, for further proceedings in accordance with the opinion herein.

 The plain language of the statutory provision mandates the view expressed herein. Our interpretation certainly ought not to be governed by overtechnical construction, nor by disregard of the plain language, but, rather, by practicality, common sense and faithful adherence to the evident legislative intent.