Tara Denise BUGGS and Dolphine Robinson, Plaintiffs,

v.

The CITY OF MINNEAPOLIS, a municipal corporation, et al., Defendants.

No. 4–71 Civ. 349.

United States District Court,
D. Minnesota,
Fourth Division.
May 25, 1973.

Legal Aid Society, Inc., by Luther A. Granquist, Minneapolis, Minn., for plaintiffs.

Keith M. Stidd, City Atty., by Arvid M. Falk, Minneapolis, Minn., for defendants.

NEVILLE, District Judge.

This is a Civil Rights suit brought by two former Civil Service Commission employees of the City of Minneapolis Civil Rights Department against the City of Minneapolis, Hugh Gallagher, Gleason Glover and Ward Canfield, individually and as members of the Civil Service Commission and against Robert Benford individually and as Director of the Civil Rights Department.

Plaintiffs allege jurisdiction under 28 U.S.C. § 1343(3) and (4) in an attempt to recover damages and obtain specific relief for deprivation of due process secured by the Civil Rights Act found in 42 U.S.C. § 1983 and the Fourteenth Amendment to the United States Constitution. The case has been submitted to the court on briefs without oral argument in support of plaintiffs' motion and defendants' cross-motion for summary judgment. In addition, the parties have submitted a number of affidavits.

Plaintiffs allege and defendants do not deny that both were nonprobationary civil service employees of the Civil Rights Department of the City of Minneapolis, that is, had been employed more than six months, and that on September 24, 1970 they were suspended from their jobs and removed from the payroll for 90 days. A written statement was given to each plaintiff by defendant Benford upon oral notification of the suspension charging plaintiffs with

"gross misconduct, insubordination, and hostile attitude towards fellow employees, both superior and subordinate."

A copy of that document was placed in plaintiffs' personnel files and affidavit evidence indicates that both documents remain there at present. Defendants do not refute that the suspensions were effected without notice and without a prior opportunity to be heard by an impartial examiner. It is also undisputed that plaintiffs later were laid off their jobs on January 1, 1971 for lack of funds to maintain their positions. However, no impropriety surrounding that action has been alleged.

Plaintiffs and defendants agree that plaintiffs were suspended pursuant to Rule 10.01 of the Rules of the Civil Service Commission of the City of Minneapolis which expressly denies a hearing to any employee, probationary or not, suspended for disciplinary reasons for

periods up to 90 days.[1] It is also undisputed that the Minneapolis City Charter, ch. XIX, § 11, makes the same provision without requiring a hearing.[2] There is no contention that defendants acted outside the scope of their apparent statutory authority.

The issues presented are whether this court has jurisdiction, whether plaintiffs have now or may be required to exhaust state remedies, whether due process was denied plaintiffs and if so whether plaintiffs requested remedies may be granted.

■ Defendants' argument that this court has no jurisdiction over the issues presented by this case has no merit. Cases cited by defendants in support of their theory go in effect to whether plaintiffs have stated a cause of action, i. e., to the ultimate determination of whether substantive Constitutional rights have been infringed. Plaintiffs have alleged deprivation of Constitutional rights associated with employment which is sufficient to invoke the jurisdiction of this court under 28 U.S.C. § 1343. Perry v. Sindermann, 408 U.S. 593, 92 S.Ct. 2694, 33 L.Ed.2d 570 (1972); Lynch v. Household Finance Corp., 405 U.S. 538, 92 S.Ct. 1113, rehearing denied 406 U.S. 911, 31 L.Ed.2d 424 (1972); Cooley v. Board of Education, 453 F.2d 282 (8th Cir. 1972); Wellner v. Minnesota State Junior College Board, No. 4–71 Civ. 555 (J. Lord, D.Minn. Dec. 18, 1972); Haaf v. Board of Commissioners, 337 F.Supp. 772 (D. Minn.1971); Olson v. Regents of the University of Minnesota, 301 F.Supp. 1356 (D.Minn.1969). In addition there can be no doubt that this court has jurisdiction as alleged under 42 U.S.C. § 1983.

■ Defendants answer in part that regardless of the jurisdictional issue plaintiffs have not exhausted administrative state remedies but fail to address that point at any length by argument or by citation of cases. On the other hand, plaintiffs properly contend that when the Civil Rights Act, 42 U.S.C. § 1981 et seq., is involved, jurisdiction is conferred upon the federal courts and there is no need to exhaust state and administrative remedies. Carter v. Stanton, 405 U.S. 669, 92 S.Ct. 1232, 31 L.Ed.2d 569 (1972); Gilliam v. City of Omaha, 459 F.2d 63 (8th Cir. 1972); Carter v. Gallagher, 452 F.2d 315 (8th Cir. 1971), cert. denied 406 U.S. 950, 92 S.Ct. 2045, 32 L.Ed.2d 338 (1972).

It is not disputed that plaintiffs were suspended as alleged; neither is it refuted that the suspensions were ordered without prior notice and without an opportunity to be heard. Therefore the case is susceptible to partial disposition by summary judgment under Rule 56 of the Federal Rules of Civil Procedure. The legal issue for real consideration then is whether plaintiffs were denied procedural due process in proceedings resulting in their suspension. This question would appear to be controlled by the recent decisions of Board of Regents v. Roth, 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972) and Perry

1. Rule 10.01 provides:

"Any employee in the classified service may be suspended for disciplinary purposes for a reasonable period, but such suspension shall not be for a period in excess of ninety (90) calendar days nor except for some offense committed by the employee so suspended. Any employee so suspended is not entitled to a hearing."

2. The City Charter provision reads as follows:

"Section 11. Officers or Employees Not to be Removed after Six Months Except for Cause.—Investigation of Charges. No officer or employee after six months' continuous employment shall be removed or discharged except for cause, upon written charges and after an opportunity to be heard in his own defense. Such charges shall be investigated by or before said Civil Service Commission or by or before some officer or board appointed by said Commission to conduct such investigation. . . . *Nothing in this chapter shall limit the power of any officer to suspend a subordinate for a reasonable period, not exceeding ninety days, for purposes of discipline.* . . ."

v. Sindermann, 408 U.S. 593, 92 S.Ct. 2694, 33 L.Ed.2d 570 (1972), and numerous cases cited therein. *Roth* reiterated the standards set out in Wisconsin v. Constantineau, 400 U.S. 433, 437, 91 S. Ct. 507, 510, 27 L.Ed.2d 515 (1971):

> "Where a person's good name, reputation, honor, or integrity is at stake because of what the government is doing to him, notice and an opportunity to be heard are essential."

The court finds that, regardless of defendants' position regarding the power to remove as concomitant to the power to appoint, the charges preferred against the plaintiffs alleging "gross misconduct, insubordination and hostile attitude towards fellow employees, both superior and subordinate" are sufficient to call into play the *Roth* and *Constantineau* requirements. The court is unimpressed by the affidavit evidence that the copies of the charges placed in plaintiffs' personnel files are not available for general inspection. Additionally, *Constantineau* makes no exception for circumstances where information pertaining to situations in which due process is denied is sequestered thereafter. Further, the court is not convinced that personnel records are compiled but never reviewed. It is a near certainty that plaintiffs' former supervisor who ordered the suspensions or others will in the future be consulted by any person investigating plaintiffs' past employment records. Plaintiffs have had serious charges leveled at them and have suffered adverse action as a result of those charges without an opportunity to be heard. The court finds in accordance with the cases cited above that plaintiffs' Constitutional right to due process has been infringed and that relief must be granted accordingly. It is immaterial whether the copy of the notice given to plaintiffs containing the charges against them be construed as adequate to meet the requirement of "written reasons" for the suspension. Because advance notice and an adequate opportunity to be heard was denied, that question need not be considered here.

It is not necessary to address plaintiffs' request to have the rule under which they were suspended declared unconstitutional because this decision is reached only on the basis of the improper application thereof; no conclusion is reached as to the validity of the rule itself, or as to whether a suspension notice reciting merely the section of the rules under which suspended without more might or might not run afoul of constitutional standards. Here however more than that was stated, to the point where *Roth* and *Constantineau* have come into play. It may be unlikely that a circumstance would arise in which an employee would be suspended from employment for disciplinary reasons without some reflection upon that employee's reputation over which the *Constantineau* court was concerned. However, it is not the court's duty to speculate about every conceivable invocation of the suspension rule. It's only duty here is discharged by the ruling on the facts before it.

So, in this court's view plaintiffs are entitled to a declaration that the disciplinary suspensions they suffered are invalid for lack of due process[3]. Additionally, plaintiffs are entitled to a hearing on the merits of their suspensions complete with notice and an opportunity to be heard if they desire to exercise that right. Wellner v. Minnesota State Junior College Board No., 4–71 Civ. 555 (D.Minn. Dec. 18, 1972); Olson v. Regents of the University of Minnesota, 301 F.Supp. 1356 (D.Minn.1969). *See* Board of Regents v. Roth, 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972). The court does not feel however that on this motion it

---

3. In the court's view, the convening of a three-judge court under 28 U.S.C. 2281 et seq. is not necessary. Neither party has requested it and the complaint does not pray for it. Since the rule was unconstitutionally applied in this case, there is no need to determine the constitutionality of the rule or the Minneapolis City Charter provision per se.

should grant the further relief plaintiffs request of back pay and the other incidental benefits sought. Such an order would be tantamount to a finding on the merits that the suspensions were improperly meted out, and the court has heard no evidence thereon. In this regard the case differs from Wellner v. Minnesota State Junior College 4–71 Civ. 555 (D.Minn. Dec. 18, 1972), decided by Judge Lord of this court where he heard evidence for two days and at the conclusion found that the reasons for discharge of an employee were "without foundation in fact". The court is aware of Snead v. Department of Social Services of City of N. Y., 355 F.Supp. 764 (S.D.N.Y.1973), a three-judge court holding invalid a New York statute permitting a government agency to suspend from employment for one year those found mentally unfit for civil service. This court follows that holding except for the last three lines when that Court, without any discussion, orders back pay for the period of involuntary leave of absence of the employee. *Snead* apparently proceeds on the premise that since there was no prior hearing, plaintiff there was never *de jure* off the payroll and thus her salary continued. This court does not believe such principle applicable to this case and holds that if after a hearing the charges are not established on the merits, then back pay may be due. As the Court said in Perry v. Sindermann, 408 U.S. 593, 92 S.Ct. 2694, 33 L.Ed.2d 570 (1972):

"In this case, of course, the respondent has yet to show that the decision not to renew his contract was, in fact, made in retaliation for his exercise of the constitutional right of free speech. The District Court foreclosed any opportunity to make this showing when it granted summary judgment. Hence, we cannot now hold that the Board of Regents' action [in not rehiring respondent] was invalid."

The court believes this is sound reasoning and unless lack of cause for suspension appears, back pay should not be awarded, the burden being on the Civil Service Commission of course to show cause for suspension.

Plaintiffs request that a copy of this order be distributed throughout Minneapolis to supervisory personnel who presently may order suspensions under the subject rules is denied and the court does not so order nor subscribe to such requests.

As to the type of prior hearing which should be held, this court should not attempt to specify with particularity. Clearly it should be before an impartial person or persons, should contemplate timely notice, a chance to plaintiffs to be represented and to be confronted with and cross-examine witnesses and whatever decision be reached must be supported by some substantial evidence. As stated in *Snead supra*:

"Although we hold that defendants must conduct an adversarial hearing before placing civil service employees in permanent status on involuntary leave of absence for mental unfitness in the absence of exceptional circumstances requiring immediate action, we do not prescribe the precise form such hearings may take.[37] It

37. *Cf*. Fuentes v. Shevin, 407 U.S. 67, 96–97, 92 S.Ct. 1983, 32 L.Ed.2d 556 (1972) ; Bell v. Burson, 402 U.S. 535, 542–543, 91 S.Ct. 1586, 29 L.Ed.2d 90 (1971).

is up to the state to determine which of the many potential formats it deems most appropriate.[38] All that the Con-

38. For example, the state might choose to retain the current psychiatric examination and hold an adversary hearing after its completion and introduce it as evidence at that proceeding. No doubt there are other alternatives. It is also appropriate to note that due process does not require both a prior and a subsequent hearing. Goldberg v. Kelly, 397 U.S. 254, 267 n. 14, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970). If the state desires to make the prior hearing the sole hearing, however, a greater degree of formality is required. *Cf*. Boddie v. Connecticut, 401 U.S. 371, 378, 91 S.Ct. 780, 28 L.Ed.2d 113 (1971) ; Goldberg at 267, 90 S.Ct. 1011, 25 L. Ed.2d 287.

stitution requires is that before involuntary leaves of absence are effectuated, which may continue for one year without pay, tenured civil service employees charged with a mental disability be granted a hearing containing the 'rudimentary due process' [39] necessary to the accurate deter-

39. Goldberg v. Kelly, 397 U.S. 254, 267, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970)."

mination of the validity of the allegation. . . .

355 F.Supp. at 773. This would seem to be in accord with *Roth* and *Perry supra*. See particularly a concurring opinion of Chief Justice Berger in Perry v. Sindermann, 408 U.S. 593, 92 S.Ct. 2717, 33 L.Ed.2d 581 (1972). See also Morrissey v. Brewer, 408 U.S. 471, 92 S.Ct. 2593, 2604, 33 L.Ed.2d 484 (1972), and Goldberg v. Kelly, 397 U.S. 254, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970), where the United States Supreme Court takes the same view in parole violation and welfare hearings and does not attempt to delineate the exact procedures short of laying down broad outlines.

A separate order has been entered.