Barbara FERRIS, Plaintiff,

v.

SPECIAL SCHOOL DISTRICT NO. 1 and Charles S. Marks, Defendants.

No. 4-73 Civ. 333.

United States District Court,
D. Minnesota,
Fourth Division.

Nov. 29, 1973.

———◆———

Oppenheimer, Wolff, Foster, Shepard & Donnelly by Eric R. Miller, St. Paul, Minn., for plaintiff.

Lindquist & Vennum by Jerrold F. Bergfalk, Minneapolis, Minn., for defendants.

NEVILLE, District Judge.

Plaintiff was a teacher employed by defendant School Board on probationary status, i. e., one employed for a period of less than three years. On February 16, 1973, she was given the required written notice that she would not be rehired for the next school year, which notice, by the literal terms of Minn.Stat. § 125.17, effectively terminated her employment as of the end of the then-current school year. Minn.Stat. § 125.17 provides in relevant part:

> Subd. 2. All teachers in the public schools in cities of the first class during the first three years of consecutive employment shall be deemed to be in a probationary period of employment during which period any annual contract with any teacher may, or may not, be renewed as the school board shall see fit. . . .

> Subd. 3. . . . Any probationary teacher shall be deemed to have been re-employed for the ensuing school year, unless the school board in charge of such school shall give such teacher notice in writing before April 1 of the termination of such employment. In event of such notice the employment shall terminate at the close of the school sessions of the current school year.

No direct attack is made here on the constitutionality of the above statute nor of the validity of a three year probationary period during which discharge can be effected without cause; rather the claim is that under the particular facts of this case, plaintiff was constitutionally entitled to a due process hearing before a refusal to renew her employment because by the evidence contained in the written documentation, defendants have caused plaintiff's case to fall within the ambit of two United States Supreme Court cases, Board of Regents of State Colleges v. Roth, 408 U. S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972) and its companion case of Perry v. Sindermann, 408 U.S. 593, 92 S.Ct. 2694, 33 L.Ed.2d 570 (1972). So far as the statute itself reads, defendants had no obligation during the probationary period to give plaintiff any notice except one of non-renewal before April 1st, nor to state any reasons for non-continued employment, nor to write any letter justifying or attempting to justify its action;[1] nor does the statute require that

---

1. If there are any supplementary rules or regulations they were not produced; nor were any other portions of the statute called to the court's attention.

it establish or make a showing of cause. Employment during the probationary period "may or may not be renewed *as the school board shall see fit.*" This does not appear to require valid reasons, nor a statement thereof, but leaves the matter entirely in the discretion of the board, a fact known to the probationary teacher when she accepts employment originally. The Board's action, so far as the statute reads, may be arbitrary without requiring any real cause unless and until the teacher has passed the probationary period. This may indeed seem harsh, but it is the statutory language and if unjust should be amended by the legislature.

The only question really argued by defense counsel in this case then is whether the Board, by writing plaintiff a letter assigning reasons and by revealing teacher classroom progress reports—alleged by the plaintiff to be in part false and fabricated—went so far as unwittingly to bring itself and the case within one of the exceptions or principles spoken of in *Roth* or some other rule or exception which should be included with those named. If so, and so that plaintiff may "clear her name" if she is able so to do, then it should be required to hold a hearing with the burden of proof on plaintiff and establish the truth or falsity of the facts alleged; otherwise not. Plaintiff requested a hearing of her case and a written statement of the reasons for the refusal to rehire her. The defendant district provided the requested written statement,[2] but declined to hold a hearing on the grounds that such was not required by Minnesota statute.

Plaintiff subsequently brought action in this court, asserting jurisdiction under 28 U.S.C. § 1343 and seeking damages and injunctive relief pursuant to 42 U.S. C. § 1983, alleging that the school dis-

trict's failure to grant her a hearing constituted a deprivation of liberty and property without due process, in violation of her rights under the Fifth and Fourteenth Amendments. This precipitated the present dismissal motion by defendants.

■ The court is of the opinion, and the parties are in agreement, that the basic principles governing here are established by the Supreme Court in Board of Regents of State Colleges v. Roth, 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972), and its companion case, Perry v. Sindermann, 408 U.S. 593, 92 S.Ct. 2694, 33 L.Ed.2d 570 (1972). *Roth*, when analyzed, in reality set out four situations in which a nontenured teacher is entitled to a hearing on the issue of contract renewal:

1. Where the contract nonrenewal is related to the teacher's exercise of freedom of speech under the First Amendment.

2. Where the teacher is confronted with a charge that might seriously damage his or her standing and associations in the community.

3. Where the failure to re-employ the teacher imposes a stigma or other disability on him or her which forecloses future freedom to take advantage of other employment opportunities.

4. Where the teacher, by virtue of existing state policies, the contract terms, or similar understandings, has a reasonable expectancy of reemployment.

5. The court is of the belief that to the above four situations or rules should be added a fifth, namely where the adverse reports on which· action is taken are prepared by the school's superiors or plaintiff's compatriots and are fabricated, without any foundation or basis in

---

2. In a letter dated April 10, 1973, Bernard W. Kaye, Associate Superintendent of Schools for Personnel, of the Minneapolis Public Schools gave the following specific reasons why Mrs. Ferris was not recommended for re-employment:

"1. Unsatisfactory relationship with pupils, staff and parents.

2. Poor judgment in making decisions.

3. Resistance to following daily routines expected of all teachers in the building such as inadequate preparation of bulletin boards, tardiness in reporting for work, and laxness in receiving students from and escorting students to various locations in the building."

fact whatsoever or are maliciously designed so as to use the freedom of the probationary period for reasons of personal calumny, hatred, vindication or dislike thus using the probationary period as a sword rather than a shield. The court recognizes that in most instances no such will appear nor be capable of proof. It is true that in many if not most instances where a non-tenured teacher is charged with misconduct and employment is not renewed it will be claimed that the reports on the basis of which action is taken are hearsay and false and can be demonstrated to be so. This is in sharp distinction however to a situation where the charges are alleged to be maliciously or vindictively inspired and fabricated out of whole cloth. Due process under the doctrine of fairness requires an opportunity for the teacher to establish such at a hearing. In plaintiff's complaint the following allegations do appear and of course raise an issue of fact:

### IX.

While employed by District No. 1, the plaintiff's overall performance as a teacher, including her relationship with students and staff as well as her teaching ability, was determined by defendant, Mr. Charles S. Marks, the Principal of Ericsson Elementary School, and is contained in periodic written evaluation reports. All of these reports are highly praiseworthy of the plaintiff's performance with the exception of only one report which is dated November 24, 1972 and attached hereto as Exhibit A. This report is wholly false and was prepared maliciously and without reasonable cause in that Mr. Marks did not conduct a classroom evaluation of the plaintiff on that date or on November 27, 1972 as has been subsequently alleged by Mr. Marks.

### X.

On February 16, 1973, the plaintiff was informed during a conference with defendant, Mr. Charles S. Marks, that her teaching performance was inadequate as reflected in a report entitled "Statement Concerning Work of Teacher and Recommendation for Re-Employment" (attached hereto as Exhibit B) which had been prepared by Mr. Marks. This report is false, malicious and was prepared without reasonable cause. The gravity of the severely damaging statements contained within this report was confirmed by Mr. Marks' statement to the plaintiff during said conference that "if you sign this, you will never get a job in the State of Minnesota" or similar words to that effect. The falsity and maliciousness of the report is evidenced by Mr. Marks suggestion to the plaintiff that as an alternative to signing the report, the plaintiff should sign a resignation form and Mr. Marks would then modify the report in favor of the plaintiff so that her record would look better. The plaintiff refused to resign.

If plaintiff is able to establish these allegations, she ought to be entitled to a forum for so doing in accordance with due process principles with the burden of proof on her. See *Wellner infra* as to a remand for a hearing even in a case where the court itself heard evidence on the merits of the charges.

Taking each of the other four categories in turn, it is conceded that the nonrenewal of plaintiff's contract had nothing to do with any exercise by her of her First Amendment rights. Plaintiff claims however that her situation comes within one or more of the other three categories established by *Roth*, thus entitling her to a due process hearing.

█ The court does not believe that plaintiff's case can be said to come within any of them. It is true that the school principal's final recommendation to the school board describes the plaintiff as "defensive", "rude", "argumentative", and "sullen". The principal even concluded that "perhaps Mrs. Ferris should seek a physician to evaluate her well be-

ing".[3] Such comments, however, do not seem to be the type that would "seriously damage" one's standing in the community. In support of her position, plaintiff cites Wisconsin v. Constantineau, 400 U. S. 433, 91 S.Ct. 507, 27 L.Ed.2d 515 (1971), which involved a procedure whereby the local police chief could make a determination that someone was an excessive drinker and order that person's name to be posted in retail liquor outlets, thus prohibiting the sale of intoxicating beverages to that person. The Court held that scheme to be an unconstitutional denial of due process, saying that a hearing is required where one's "good name, reputation, honor, or integrity is at stake". This court does not believe that describing a teacher as quoted above and even recommending that she see a doctor can be considered a "badge of infamy", to the same degree as labeling someone an "excessive drinker", such that the full panoply of due process rights is constitutionally required.

Nor does the principal's evaluation of Mrs. Ferris in the final recommendation rise to the level of "imposing a stigma" that forecloses plaintiff's freedom to take advantage of other employment opportunities. Plaintiff alleges, and it is not denied, that she has been unable to find employment as a teacher in this area since leaving her position with the defendant. There is no allegation, however, that the failure to find a new teaching position is causally related to defendant's refusal to rehire and three persons make affidavit that no one ever has inquired concerning her past employment record. It may well be that the fact that plaintiff was not rehired makes her less desirable to other potential employers, but that fact alone does not entitle her to a pretermination hearing. Board of Regents of State Colleges v. Roth, 408 U.S. 564, 574 n. 13, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972); Calvin v. Rupp, 471 F.2d 1346, 1348 (8th Cir. 1973).[4] Here, in addition to mere non-retention, there is the presence of the

---

3. The last report dated February 16, 1973 reads as follows:

"PRINCIPAL'S SUMMARY STATEMENT

This evaluation is based on _3_ visits to the teacher's classroom ___ conferences.*

CLASSROOM VISITS

| Date | Length of time |
|---|---|
| 10/25/72 | ½ hr. |
| 11/24/72 | ½ hr. |
| 1/11/73 | ¾ hr. |

CONFERENCES

| Date | Length of time |
|---|---|
| 10/25/72 | ¾ hr. |
| 11/24/72 | ½ hr. |
| 1/12/73 | ¾ hr. |

COMMENTS:

* Three conferences, as noted, plus many informal private visits to the room and discussions on attitude, tardiness, and feelings in general.

My concern, as principal, is that Mrs. Ferris, within the last three weeks, has become almost inoperative in her relationships to various members of the Ericsson staff, and a source of irritation to some parents. Perhaps Mrs. Ferris should seek a physician to evaluate her wellbeing.

Mrs. Ferris states that she signed the teacher's copy of her evaluation, and that Mr. Lindstedt has this copy, and that this is all she is going to sign.

The re-employment of this teacher is Recommended ___. *Recommended with reservation ___. Not recommended X. (*This applies to first and second year of probation only)

Date February 16, 1973    Signed /s/ Charles S. Marks
                                            Principal"

---

4. In *Calvin* the court stated:
"The only injury plaintiff alleges here, however, is that his record of non-retention will make him less desirable to other potential employers. Even if we assume that plaintiff could have satisfied his burden of proof

final recommendation which describes the plaintiff as rude and argumentative, but such adjectives certainly cannot be considered stigmas, as might the label "racist" (see Wellner v. Minnesota State Junior College Board, 487 F.2d 153 (8th Cir. Oct. 23, 1973)), or even the attribute of disloyalty to superiors (see Wilderman v. Nelson, 467 F.2d 1173 (8th Cir. 1972)). Buggs v. Minneapolis, 358 F. Supp. 1340 (D.Minn.1973). There is no state policy, statutory or otherwise, which automatically bars plaintiff from future public employment by reason of her termination by defendant. Further, the court does not believe that the remarks on plaintiff's record are so derogatory or prejudicial as to work a foreclosure of her freedom to take advantage of other employment opportunities. Consequently, the court finds that defendant's refusal to rehire plaintiff and the accompanying evaluation of the plaintiff were not a deprivation of liberty within the meaning of *Roth* so as to entitle plaintiff to a due process hearing.

■ Thus, plaintiff can prevail here under the present *Roth* principles only if the court finds that she was deprived of a "reasonable expectancy" of reemployment. However, plaintiff alleges no state policy, contract terms, or similar understandings that might have given rise to such an expectancy. The statute under which she was employed, Minn. Stat. § 125.17, vests the decision on continued employment in the discretion of the school board; and this court has held that "a plain reading of the statute involved clearly negates the existence of any expectancy of reemployment on the part of the plaintiffs." Hagen v. St. Paul Bd. of Education, 333 F.Supp. 1355, 1356–1357 (D.Minn.1971) (Devitt, C. J.). Plaintiff alleges that most of the evaluations of her had been favorable and thus she expected to be rehired. But that is insufficient. As the Supreme Court said in *Roth*:

To have a property interest in a benefit, a person clearly must have more

than an abstract need or desire for it. *He must have more than a unilateral expectation* of it. He must, instead, have a legitimate claim of entitlement to it.

408 U.S. at 577, 92 S.Ct. at 2709. [Emphasis added]. In the face of Minn.Stat. § 125.17, and lacking any contract terms or customary practices limiting the School Board's discretion not to rehire Mrs. Ferris, it cannot be said that she had an expectancy of reemployment amounting to a constitutionally protected property interest. See also Wilson v. Pleasant Hill School District R–III, 465 F.2d 1366 (8th Cir. 1972). The court's present holding is consistent with the *Roth* holding. Any other decision than as above leads to the conclusion that the Minnesota statute in effect has been amended by the courts to require a hearing and proof of good cause in the case of every non-renewal of a probationary employee; for certainly every discharge or non-renewal is to some extent an impediment to future employment elsewhere and any reasons assigned are indeed not a softening process.

■ This court does hold however, that under what it has designated as Rule 5 above, plaintiff is entitled to a due process hearing. As to the type of prior hearing which should be held, this court should not attempt to specify with particularity. Clearly it should be before an impartial person or persons, should contemplate timely notice, a chance to plaintiff to be represented and to be confronted with and cross-examine witnesses and whatever decision be reached must be supported by some substantial evidence. As stated in Snead v. Department of Social Services of City of N. Y., 355 F.Supp. 764 (S.D.N.Y.1973):

"Although we hold that defendants must conduct an adversarial hearing before placing civil service employees in permanent status on involuntary leave of absence for mental unfitness in the absence of exceptional circum-

on this contention in the district court, this fact alone does not establish a right to some

form of pretermination hearing." 471 F.2d at 1348.

stances requiring immediate action, we do not prescribe the precise form such hearings must take.[37] It is up to

37. *Cf.* Fuentes v. Shevin, 407 U.S. 67, 96–97, 92 S.Ct. 1983, 32 L.Ed.2d 556 (1972) ; Bell v. Burson, 402 U.S. 535, 542–543, 91 S.Ct. 1586, 29 L.Ed.2d 90 (1971).

the state to determine which of the many potential formats it deems most appropriate.[38] All that the Constitu-

38. For example, the state might choose to retain the current psychiatric examination and hold an adversary hearing after its completion and introduce it as evidence at that proceeding. No doubt there are other alternatives. It is also appropriate to note that due process does not require both a prior and a subsequent hearing. Goldberg v. Kelly, 397 U.S. 254, 267 n. 14, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970). If the state desires to make the prior hearing the sole hearing, however, a greater degree of formality is required. *Cf.* Boddie v. Connecticut, 401 U.S. 371, 378, 91 S.Ct. 780, 28 L.Ed.2d 113 (1971) ; Goldberg at 267, 90 S.Ct. 1011, 25 L.Ed.2d 287.

tion requires is that before involuntary leaves of absence are effectuated, which may continue for one year without pay, tenured civil service employees charged with a mental disability be granted a hearing containing the 'rudimentary due process'[39] necessary to

39. Goldberg v. Kelly, 397 U.S. 254, 267, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970)."

the accurate determination of the validity of the allegation. . . .

335 F.Supp. at 773. This would seem to be in accord with *Roth* and *Perry supra.* See particularly a concurring opinion of Chief Justice Burger in Perry v. Sindermann, 408 U.S. 593, 92 S.Ct. 2694, 33 L.Ed.2d 570 (1972). See also Morrissey v. Brewer, 408 U.S. 471, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972) and Goldberg v. Kelly, 397 U.S. 254, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970), where the United State Supreme Court takes the same view in parole violation and welfare hearings and does not attempt to delineate the exact procedures short of laying down broad outlines.

■ At such a hearing in addition to an attempt to show a violation of what the court has designated as Rule 5 above plaintiff should not be barred from presenting additional evidence, if any she has, in an attempt to bring herself within and under Rules 1 through 4 of the *Roth* case as above outlined. The court has in mind however fn. 12 of *Roth* reading as follows:

"The purpose of such notice and hearing is to provide the person an opportunity to clear his name. Once a person has cleared his name at a hearing, his employer, of course, may remain free to deny him future employment for other reasons."

and makes no further ruling on the matter at this time. When and if plaintiff establishes a violation of any constitutional rights then will it be timely to reconsider the matter and pursue any claim for damages and other relief requested in her complaint.

A separate order has been entered.